THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM PEREZ, Defendant-Appellee.

Second District    No. 2—92—0986

Opinion filed February 25, 1994.

134

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Richard H. Kane, of Richard H. Kane & Associates, Ltd., of Naperville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)) from an order of the circuit court of Kane County granting the motion of the defendant, William Perez, to suppress evidence. The State argues on appeal that the cocaine removed from defendant's pants pocket after a pat-down search inevitably would have been discovered during a subsequent search incident to arrest. We affirm in part, reverse in part, and remand.

The State charged the defendant by indictment with the unlawful possession of more than 15 but less than 100 grams of a substance containing cocaine with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))),

the unlawful possession of less than 15 grams of a substance containing cocaine with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 1401(c)(2) (now 720 ILCS 570/401(c)(2) (West 1992))), the unlawful possession of more than 15 but less than 100 grams of a substance containing cocaine (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 1402(a)(2)(A) (now 720 ILCS 570/402(a)(2)(A) (West 1992))), and unlawful possession of a controlled substance without a controlled substance tax stamp (Ill. Rev. Stat. 1991, ch. 120, par. 2160 (now 35 ILCS 520/10 (West 1992))). The defendant filed a motion to quash arrest and suppress all evidence discovered during a search of the residence in which he was arrested.

At the suppression hearing, the defendant testified that, on June 4, 1991, he resided at 1306 Solfisburg in Aurora. He had been living there for two months. On the evening of June 4, the defendant went to his mother's home at 230 North Sumner Street to pick up some clothes that he had left there. The defendant's brother, Raymond Perez, was present when the defendant arrived but left shortly thereafter.

The defendant testified that he was about to enter a bedroom to get his clothes when he heard somebody force open the door to the house. Several police officers entered the house and asked the defendant if he was Raymond Perez. The defendant told the officers he was not Raymond, and the officers told the defendant they were looking for his brother. The officers pulled their weapons, searched the defendant, found cocaine, and continued searching the apartment. The officers asked the defendant where the other "stuff" was, and the defendant stated that he did not know anything. The officers also found cocaine inside of a panel in a bedroom wall. The officers then arrested the defendant. The defendant also testified that his middle name is Frank and that he is commonly known as Frankie Perez.

Pamela Page testified that she is the defendant's girlfriend. On June 4, 1991, she lived at 1306 Solfisburg with her mother, her two brothers, and the defendant. At that time, defendant had been living there for about two months.

Victor Fields, a deputy with the Kane County sheriff's department and a member of the North Central Narcotics Task Force (Task Force), testified on behalf of the State. Fields testified that he obtained a warrant to search the residence at 230 North Sumner. The basis for the warrant was a controlled purchase that took place at that residence. According to Fields, an informant that was working for him purchased cocaine from the defendant.

Fields testified that he executed the warrant on June 4, 1991, with other officers of the Task Force. Fields testified that the officers

had previously received information that they would not be able to enter the residence through the front door because it was blocked by furniture. The rear door was locked. The officers entered through the rear door and encountered the defendant. Fields entered behind three or four other officers. By the time he reached the southeast bedroom located in the basement, another officer had found a plastic bag that was hidden in a recess in the bedroom wall. This bag contained a substance later identified as cocaine. Fields testified that the officers found the bag within 30 seconds after entering the home. He did not see the officers remove the bag from the wall recess.

At the time the officers found the bag, the defendant had his hands spread against a wall at the foot of the basement steps, about 8 to 10 feet from where the cocaine was hidden. Fields saw Gerald McCabe, the officer who secured the defendant, remove from the defendant's pants pocket a plastic bag containing a substance later identified as cocaine. The defendant was then placed under arrest. Fields testified that McCabe removed the plastic bag from the defendant's pocket after the other officers found the plastic bag in the wall recess. Fields also testified that the officers had not yet ascertained the defendant's identity at the time McCabe searched him.

Sergeant McCabe of the Aurora police department testified that, upon entering the residence, he proceeded directly to the basement. McCabe saw the defendant and placed him against the wall while the other officers searched the bedroom which the defendant had just exited. McCabe had the defendant place his hands against the wall and spread his legs and then conducted a pat-down search of the defendant. McCabe testified that his purpose in doing this was to secure the area, prevent the defendant from interfering with the search, and determine if the defendant was carrying weapons. McCabe felt a soft "package-type" item in the defendant's pocket and suspected it might contain drugs. He removed the package, which was the plastic bag containing cocaine. McCabe then placed the defendant under arrest. According to McCabe, the other officers discovered the cocaine in the wall "at the same time or just previous to" his search of defendant.

The trial court denied the defendant's motion with respect to the cocaine found in the wall recess because that evidence was obtained as a result of a proper search of the residence pursuant to a search warrant. The trial court granted the defendant's motion to suppress the cocaine that McCabe removed from the defendant's pocket, concluding that the search of the defendant was not authorized under section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 108—9 (now 725 ILCS 5/108—9 (West 1992))).

The State moved for reconsideration of the trial court's ruling regarding the cocaine seized from the defendant's pocket. At the hearing on this motion, the State argued for the admission of the cocaine under the inevitable discovery doctrine. The court concluded that the State failed to meet its burden of demonstrating the evidence inevitably would have been discovered and denied the motion. The State filed a certificate of impairment and a timely notice of appeal.

On appeal, the State argues that the trial court should have admitted the cocaine seized from the defendant's pocket under the "inevitable discovery" exception to the exclusionary rule. According to the State, once the police officers discovered the cocaine that was hidden in the wall recess and ascertained the defendant's identity, they would have had probable cause to arrest the defendant. The cocaine in the defendant's pocket inevitably would have been discovered during a search incident to the defendant's arrest.

The defendant has not filed an appellee's brief. However, because the record is relatively simple, and the claimed errors can easily be evaluated without the aid of an appellee's brief, we will address the State's contentions. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

The trial court found that the search of the defendant during the execution of the search warrant was improper and that the cocaine seized from the defendant's pocket would not have been inevitably discovered even absent the improper search. A trial court's decision to suppress evidence will not be overturned on review unless that decision is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Once the defendant satisfies his burden of demonstrating that the police obtained the evidence illegally, the burden of proof shifts to the State to demonstrate that the evidence was not obtained illegally. *People v. Spann* (1992), 237 Ill. App. 3d 705, 708.

■ The State does not challenge the trial court's finding that the search of the defendant was improper. Therefore, we must determine whether the evidence should have been admitted under the "inevitable discovery doctrine." This doctrine was developed as an exception to the exclusionary rule, which requires the exclusion at trial of illegally obtained evidence. (*People v. Edwards* (1991), 144 Ill. 2d 108, 142.) Under this doctrine, evidence that would be inadmissible at trial because it was obtained in violation of a defendant's constitutional rights may nevertheless be admitted if the prosecution can establish by a preponderance of the evidence that it inevitably would have been discovered by lawful means and without reference to any police error or misconduct. *Nix v. Williams* (1984), 467 U.S. 431, 444, 448, 81 L. Ed. 2d 377, 387-88, 390, 104 S. Ct. 2501, 2509, 2511.

■ Generally, courts will find that evidence inevitably would have been discovered where (1) the condition of the evidence when actually found by lawful means would have been the same as that when improperly obtained; (2) the evidence would have been discovered through an independent line of investigation untainted by the illegal conduct; and (3) the independent investigation was already in progress at the time the evidence was unconstitutionally obtained. *People v. Shanklin* (1993), 250 Ill. App. 3d 689, 696; *People v. Winsett* (1991), 222 Ill. App. 3d 58, 69, *rev'd on other grounds* (1992), 153 Ill. 2d 335; see also *Nix*, 467 U.S. at 459, 81 L. Ed. 2d at 397, 104 S. Ct. at 2517 (Brennan, J., dissenting).

■ .We conclude that the State met its burden of demonstrating the cocaine removed from the defendant's pocket inevitably would have been discovered even if the improper search of the defendant had not occurred. The police officers certainly had the authority to detain the defendant until they completed the search of the home. (*Michigan v. Summers* (1981), 452 U.S. 692, 705, 69 L. Ed. 2d 340, 351, 101 S. Ct. 2587, 2595; *Edwards*, 144 Ill. 2d at 126.) The officers then would have found the cocaine hidden in the wall recess. The defendant had told the officers that he was not Raymond Perez, and it is clear that, upon discovering the cocaine in the wall recess, the officers would have made further attempts to ascertain the defendant's identity. It is also clear that, because the defendant was already the subject of an ongoing investigation, the officers would have arrested him upon discovering his identity.

It is necessary to determine, however, whether the police would have had probable cause to arrest the defendant at this time. The State presented uncontradicted evidence revealing that, at the relevant time, the police officers knew that a police informant purchased cocaine from the defendant and that this purchase was connected to the residence at 230 North Sumner. At the time the officers discovered the cocaine in the wall recess, the defendant was the only person present in that residence.

If information obtained from an informant is essential to a finding of probable cause, that information must meet standards of reliability before it can be considered in determining probable cause. (*People v. Williams* (1991), 147 Ill. 2d 173, 209-10.) The State failed to present any testimony regarding the reliability of the informant that Officer Fields used in this case. However, substantial corroboration of the informant's story will not only establish the informant's veracity, but will also support an inference that the informant obtained the information reliably. *Williams*, 147 Ill. 2d at 210; see also *People v. LeCour* (1988), 172 Ill. App. 3d 878, 888 (although police did not have

prior experience with the informant's reliability, the corroboration of the information given by the informant was sufficient to create probable cause to arrest).

Here, the discovery of the cocaine in the wall recess corroborated the informant's story regarding the controlled purchase. This independent corroboration was sufficient to give the arresting officers reasonable grounds to believe that the defendant had committed a controlled substance offense.

The record reveals that, even if the improper search of the defendant had not occurred, the officers would have had probable cause to arrest the defendant based upon the search of the premises and would have arrested defendant at that point. Upon the defendant's arrest, the officers would have had the authority to perform a search of the defendant incident to the arrest (*People v. Kalivas* (1991), 207 Ill. App. 3d 415, 417) and would have discovered the cocaine at that time.

Because the search incident to arrest would most likely have occurred shortly after the discovery of the cocaine in the wall recess, it is clear that the condition of the cocaine in the defendant's pocket would have been the same when found illegally as it would have been when found legally. Also, the evidence would have been found through an independent investigation untainted by the illegal search conducted by Officer McCabe. The trial court found that the officers discovered the cocaine in the wall recess pursuant to a proper search of the home. It found, however, that the search of the home did not justify the search of the defendant because the defendant's connection to the premises had not yet been determined. (See *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245-46, 100 S. Ct. 338, 342 (a person's mere presence in a place being searched pursuant to a valid search warrant, without more, does not give the officers executing the search warrant probable cause to search that person).) Implicit in this finding is that the search of the defendant was independent of the search of the home that was occurring at about the same time.

In reviewing the trial court's decision, we will not substitute our judgment for that of the trial court regarding matters of the credibility of the witnesses and the weight to be accorded their testimony. (*People v. Frazier* (1993), 248 Ill. App. 3d 6, 13.) Also, we presume the trial court credited only the testimony that supports its ruling. (*People v. Kolody* (1990), 200 Ill. App. 3d 130, 136.) Even if we accept the defendant's testimony as true, his testimony, combined with that portion of the officers' testimony which stands uncontradicted, leads us to conclude that the trial court's ruling regarding the cocaine removed from the defendant's pocket was manifestly

erroneous. The information obtained as a result of the earlier controlled purchase and the search of the home would have given the officers probable cause to arrest the defendant. To make the arrest, they would *not* have had to rely on any information obtained as a result of the illegal search. Accordingly, the cocaine in the defendant's pocket would have been discovered as a result of this independent investigation that was already in progress at the time Officer McCabe illegally searched the defendant.

This case is very similar to *People v. Zurawski* (1992), 234 Ill. App. 3d 418. In *Zurawski*, the police executed an arrest warrant for an individual named Napoleon and a search warrant authorizing a search of Napoleon's garage. The warrants were based on two undercover drug purchases from Napoleon. The police informant who participated in those purchases also provided the police with a description of Napoleon's supplier. Upon executing the warrant, the officers saw the defendant in the garage talking to Napoleon. The police instructed both men to lie on the floor and handcuffed them. They then removed from the defendant's pocket evidence linking him to the earlier undercover purchases.

This court concluded that, even if the search of the defendant's pocket was unreasonable, the evidence obtained therefrom inevitably would have been discovered absent that search. (*Zurawski*, 234 Ill. App. 3d at 427.) The police could have detained the defendant until the search of the garage was completed. During this time, the officers would have discovered how closely the defendant matched the informant's description of Napoleon's supplier and how closely the car parked in front of Napoleon's home matched the informant's description of the supplier's car. We concluded that, at that point, the police would have had probable cause to search the defendant for drugs or other contraband and would have discovered the items removed from the defendant's pocket. *Zurawski*, 234 Ill. App. 3d at 427.

As in *Zurawski*, the facts which would have given rise to the eventual discovery of the incriminating evidence were discovered during a lawful search of the premises on which the defendant was encountered and independent of the unlawful police conduct. Therefore, we conclude that the trial court's decision to suppress the cocaine found in the defendant's pants pocket was manifestly erroneous.

Accordingly, we affirm the trial court's order denying the defendant's motion to suppress the evidence seized from the wall recess, reverse the trial court's order granting the defendant's motion to suppress the evidence seized from the defendant's pocket, and

remand the cause for further proceedings consistent with this decision.

Affirmed in part; reversed in part and remanded.

INGLIS, P.J., and GEIGER, J., concur.