THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ORLANDO ALVARADO, Defendant-Appellee.

Fourth District   No. 4—94—0250

Argued November 14, 1994.—Opinion filed December 15, 1994.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

W. Keith Davis (argued), of Jennings, Novick, Taseff, Smalley & Davis, of Bloomington, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

The circuit court of McLean County granted defendant Orlando Alvarado's motion to suppress evidence seized from his motel room, finding his consent to search was invalid. The State appeals, and we reverse.

# I. FACTS

Defendant was arrested and consented to a search of his motel room, where a large amount of cannabis was seized. He was indicted with unlawful possession of cannabis, unlawful possession of cannabis with intent to deliver, and cannabis trafficking, in violation of sections 4, 5, and 5.1 of the Cannabis Control Act (720 ILCS 550/4, 5, 5.1 (West 1992)). Prior to trial, defendant filed a motion to suppress the evidence, alleging his consent for the search had not been "knowing and voluntary." At the suppression hearing, only the arresting officer and defendant testified. There was no significant conflict in their testimony, and the State presented no further evidence or testimony. The trial court issued a ruling from the bench, and later entered a written order. Because neither party disputes the factual findings of the trial court, the facts as found in the written order are presented in their entirety:

*"FINDINGS OF FACT*

On October 23, 1993, the defendant Orlando L. Alvarado registered as a guest at the Fairfield Inn located at 202 Landmark Drive in the Town of Normal, in the County of McLean, in the State of Illinois. He was assigned to Room 349. Late in the morning hours of October 24, 1994, a motel maid was performing routine housekeeping duties. She observed no 'Do Not Disturb' sign on the door knob of Room 349. She opened the door and observed that the defendant was not present in the room. She also observed a green leafy substance all over the bed. Apparently believing the substance to be marijuana, she became apprehensive and immediately closed the door. She contacted the motel manager, who promptly called the Normal Police Department.

Officer Martin L. Fogler responded to the Fairfield Inn and conferred briefly outside of Room 349 with the maid and the motel manager. The motel manager then opened the door. As soon as the door was opened a small crack, a strong odor emanated from the room. Officer Fogler identified the odor as that of marijuana. Without entering the room, Fogler peeked in and there, in plain view, was the whole bed covered with marijuana. The police officer and the motel employees then closed the door, and the officer summoned detectives from the Normal Police Department. After several officers from the Normal Police Department arrived, an attempt was made to call the state's attorney's office to obtain a search warrant. Officer Fogler went to the motel office where he was furnished with a copy of the defendant's driver's license which included the defendant's picture.

Officer Fogler then took up a watch outside of Room 349. Within one-half to three-quarters of an hour, a man with a room key in

his hand came walking up the hallway toward Room 349. He appeared to be the same man pictured on the copy of the driver's license. Fogler asked the man who he was, and he identified himself as Orlando Alvarado. Motel employees opened the door to Room 350, immediately across the hall from Room 349, and placed the defendant and Officer Fogler·in Room 350. Fogler placed handcuffs on the defendant and administered *Miranda* warnings. The defendant asked to speak with counsel. After some period of time passed, and officers had apparently been unable to secure a search warrant, Fogler asked Alvarado whether he would grant permission for a search. Alvarado said that he would grant permission to Fogler and Lt. Frank Zayas to search Room 349. He executed Defendant's Exhibit 2, a written permission to search form. No search warrant was issued.

Officers subsequently searched Room 349 and seized a large amount of material alleged to be cannabis. It is this material which the defense seeks to have suppressed."

Three facts need clarification. First, the motel manager opened the door to the room at his own initiative, not at the officer's request. Therefore, the initial viewing of the room is not at issue. Second, the attempt to obtain a search warrant was still in progress when the officers asked for defendant's consent to search. The officers informed defendant of this when they requested his consent. Third, defendant consented to the search 14 minutes after he was taken into custody.

The trial court next set out its conclusions of law in the written order:

### "CONCLUSIONS OF LAW

Whether a consent is voluntarily given or is coerced is ordinarily a question of fact. [Citations.] The voluntariness of a consent must be proved by clear and positive testimony which established that there was no actual, or implied duress or coercion. *U.S. vs. Tolias,* 548 F.2d 277 (9 C.C.A., 1977); *People v. Haskell,* 41 Ill. 2d 25, 241 N.E.2d 430 (1968). The consent must be shown to be unequivocal and specific, and every reasonable presumption is indulged against a waiver of fundamental constitutional rights. [(*Haskell,* 41 Ill. 2d 25, 241 N.E.2d 430.)] The fact that *Miranda* warnings had been given prior to the consent to search is a factor which tends to show voluntariness. *People v. DeMorrow,* 59 Ill. 2d 352, 320 N.E.2d 1 (1974); *People v. Shaver,* 77 Ill. App. 3d 709, 396 N.E.2d 643 (1979). Although Orlando Alvarado did not demonstrate any resistance to the request of the police for permission to search Room 349, he had previously requested the assistance of counsel. The court finds that this request for the assistance of counsel constituted an assertion by Orlando of his constitutional rights and that

inquiring further, following his request for counsel, whether he would be willing to consent to a search renders the consent obtained thereby the product of implied coercion."

The trial court's rationale in its written order differed from its rationale during its bench ruling:

"Well, I have read the case of *People v. Shaver*, and it is, of course, the responsibility of the People to establish that the consent was voluntarily given, and that it was, and the voluntariness of it must be clear, must be proved by clear and positive testimony that establishes that there was no duress or coercion, either actual or implied.

Now, it is clear that this was taken while the Defendant was, at least, detained. He was not in the station, but he was in Room 350, which is right across the hall from the room in which the forbidden fruit was located, *** and he was handcuffed, and that also appeared to be a situation that was present in the *Shaver* case as well. So it does seem to me that at this point he clearly believed that he had to comply with the request of the police officer, and I do think that there is evidence of implied coercion and duress on the part of the police, and I am, therefore, going to grant the motion to suppress the results of the search, and I do find that the permission is not voluntary."

The State now appeals, arguing the trial court erred by (1) requiring the State to prove voluntariness of a consent to search by clear and positive testimony, (2) ruling defendant's consent was vitiated because his consent followed his request for counsel, (3) ruling defendant's consent was involuntary because of a coercive environment, and (4) failing to allow admission of the cannabis under the independent source or inevitable discovery doctrine.

## II. DISCUSSION

The voluntariness of a consent to a police search depends on the totality of the circumstances, and a trial court's determination of voluntariness will not be disturbed unless it is clearly unreasonable. (*People v. Casazza* (1991), 144 Ill. 2d 414, 417-18, 581 N.E.2d 651, 653.) More generally, a trial court's decision whether to suppress evidence will not be disturbed unless manifestly erroneous. (*People v. Thompson* (1991), 215 Ill. App. 3d 514, 519, 575 N.E.2d 256, 259.) However, "where neither the facts nor credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider *de novo.*" *In re D.G.* (1991), 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (determination of whether probable cause exists).

## A. *Standard of Proof*

The State first argues the trial court required the State to meet too high a burden of proof in showing consent. The trial court relied on *People v. Haskell* (1968), 41 Ill. 2d 25, 31, 241 N.E.2d 430, 433-34, which stated:

" '[C]onsent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, either actual or implied.' [Citations.] The prosecution must show a consent that is 'unequivocal and specific' [citation], 'freely and intelligently given' [citation]. 'Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.' *Johnson v. Zerbst* [(1938)], 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019."

As the language in *Haskell* and its citation to *Zerbst* reveal, *Haskell* was decided at a time when a consent to search was viewed as a waiver of a right akin to a waiver of other fundamental rights accorded a criminal defendant. Therefore, courts believed a consent to search had to be given voluntarily *and* knowingly, and courts placed a high burden on the State to prove a waiver occurred. However, the United States Supreme Court, in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041, repudiated this view. In *Schneckloth*, the Court declared the *Zerbst* "strict standard of waiver"—an intentional relinquishment or abandonment of a known right or privilege—applied *only* to those rights guaranteed to a criminal defendant so that the truth may be fairly ascertained. The strict test of waiver did *not* apply to fourth amendment rights designed to protect the security of one's privacy against arbitrary intrusion by the police. Therefore, the State need *not* show the defendant knew he had a right to refuse to consent in order to prove a consent to search to be valid. The Court also declared unlike those constitutional guarantees that protect a defendant at trial, "it *cannot* be said every reasonable presumption ought to be indulged against voluntary relinquishment [of a right against unreasonable searches]." (Emphasis added.) (*Schneckloth*, 412 U.S. at 243, 36 L. Ed. 2d at 872, 93 S. Ct. at 2056.) The next year, the Court applied the preponderance of the evidence standard for proving voluntariness of a consent to search. *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.

After *Schneckloth* and *Matlock*, although no Illinois court expressly repudiated the "clear and positive testimony" standard, that standard fell into disuse and was replaced by the "preponderance of the evidence" standard. The Supreme Court of Illinois recently adopted the "preponderance of the evidence" standard: "The voluntariness of a consent to a police search depends on the totality of the

circumstances and it is the State's burden to show by a preponderance of the evidence that the consent was voluntarily given." (*Casazza*, 144 Ill. 2d at 417, 581 N.E.2d at 653.) Since *Casazza*, Illinois courts have continued to apply the preponderance of the evidence standard. (See, *e.g.*, *People v. Taggart* (1992), 233 Ill. App. 3d 530, 552, 599 N.E.2d 501, 516; *People v. Cardenas* (1992), 237 Ill. App. 3d 584, 587, 604 N.E.2d 953, 955.) In other words, case law since *Haskell* has repudiated its "clear and positive testimony" standard.

Defendant asserts the language in *Casazza* concerning the preponderance of the evidence standard was *dicta*, and *Haskell* remains the law. He also asserts *Haskell* and *Casazza* are consistent because the trial court may require the State to present "clear and positive testimony" in establishing consent by "a preponderance of the evidence." Defendant's argument is without merit. First, defendant does not offer, nor can we find, any support for these propositions. Defendant's assertions are at odds with Illinois and Federal case law since *Haskell*. Second, even without relevant case law, the phrase "clear and positive" is facially more akin to the phrase "clear and convincing" than the phrase "preponderance of the evidence." The phrase "by a preponderance of the evidence" is equivalent to "more likely than not." However, the use of the word "clear" in the phrase "clear and positive testimony" denotes a standard higher than "more likely than not." The trial court therefore erred by requiring the State to meet an improperly high burden in proving consent to search.

Ordinarily in this situation we would remand for the trial court to apply the correct burden of proof. However, we reverse the trial court's decision for the reasons explained below.

## B. *Voluntariness and Miranda*

■ In its written ruling, the trial court reasoned defendant's consent was invalid because the request to search was made after he had been issued a *Miranda* warning and had requested counsel. Once a suspect is in custody and requests counsel, *Miranda* prohibits "interrogation" of the suspect, *i.e.*, words or actions "the police should know are reasonably likely to elicit an incriminating response from the suspect" (*Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1689-90), or questions calling for an answer of a "testimonial" nature (questions calling for an answer containing "an express or implied assertion of fact or belief") (*Pennsylvania v. Muniz* (1990), 496 U.S. 582, 597, 110 L. Ed. 2d 528, 549, 110 S. Ct. 2638, 2648). Defendant equates the request to search to an "interrogation." The United States Supreme Court has never

spoken on this issue, and only one Illinois case has discussed this precise issue.

In *People v. Wegman* (1981), 101 Ill. App. 3d 634, 428 N.E.2d 637, the defendant was arrested, taken to the police station, and given *Miranda* warnings. He requested counsel, and the officers ceased questioning him. However, the officers then asked for consent to search his car and apartment. He agreed, but later moved to suppress evidence seized in the searches, alleging his consent was invalid because his consent was given after he had requested, but had not yet been provided, counsel. The trial court denied the motion, and defendant appealed. The appellate court quoted with approval a Supreme Court of Colorado decision on the precise issue:

> " 'The ruling of the United States Supreme Court in *Miranda v. Arizona* [(1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602], was designed as a prophylactic rule to correct and prevent abusive police practices in the area of confessions. The Supreme Court has not acted to extend the rule in *Miranda* to the Fourth Amendment. In the absence of such an extension of the rule in *Miranda* by the Supreme Court, this court shall continue to adhere to the rule that in order for a search with consent to be reasonable the consent must be voluntary, and that the question of whether the consent was freely and intelligently given is to be determined according to the circumstances in each case.' " (*Wegman*, 101 Ill. App. 3d at 638, 428 N.E.2d at 640-41, quoting *Phillips v. People* (1969), 170 Colo. 520, 527-28, 462 P.2d 594, 597.)

The appellate court then found defendant's consent voluntary. (*Wegman*, 101 Ill. App. 3d at 638, 428 N.E.2d at 641.) Illinois courts have cited *Wegman* with unanimous approval as stating the lack of *Miranda* warnings did not vitiate consent (*People v. Smith* (1984), 124 Ill. App. 3d 914, 464 N.E.2d 1206; *People v. Phillips* (1994), 264 Ill. App. 3d 213, 636 N.E.2d 1118; see also *People v. Allen* (1993), 249 Ill. App. 3d 1001, 620 N.E.2d 1105 (summarily concluding request for consent to search jacket was not "interrogation" in violation of *Miranda*).

*Wegman* comports with United States Supreme Court precedent. A request for a consent to search is not reasonably likely to elicit an incriminating response. It is merely a request for the granting or denial of authority. Further, a suspect's grant or denial of authority is not capable of communicating an express or implied assertion of fact or belief but rather merely conveys permission to search or withholds that permission. Because there is no "testimonial" component of a grant or denial of authority to search, a request for a consent to search does not violate a defendant's fifth amendment right against self-incrimination.

Defendant cites cases in other jurisdictions as authority for his position a consent to search is testimonial in nature. We reject defendant's position. First, each of defendant's cases was decided prior to *Muniz*. The cases since *Muniz* are in accord with *Wegman*. (See, *e.g.*, *State v. Houser* (1992), 241 Neb. 525, 490 N.W.2d 168; *State v. Gant* (La. 1994), 637 So. 2d 396.) Second, the cases defendant cites represent the minority view. The prevailing view is a consent to search " 'is neither testimonial, nor communicative in the Fifth Amendment sense.' " (3 W. LaFave, Search & Seizure § 8.2(j), at 215 (2d ed. 1987), quoting *People v. Thomas* (1970), 12 Cal. App. 3d 1102, 1110, 91 Cal. Rptr. 867, 872.) Third, *Wegman* decided this issue, and we agree with *Wegman*. The trial court therefore erred by finding defendant's consent was vitiated on this basis.

## C. *Voluntariness and Coercion*

Defendant next asserts his consent was involuntary because of a coercive environment. A "voluntary" decision is one which is " 'the product of an essentially free and unconstrained choice by its maker.' " (*Schneckloth*, 412 U.S. at 225, 36 L. Ed. 2d at 862, 93 S. Ct. at 2047, quoting *Culombe v. Connecticut* (1961), 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057, 81 S. Ct. 1860, 1879.) A defendant's consent is "involuntary" if " 'his will has been overborne and his capacity for self-determination critically impaired.' " (*Schneckloth*, 412 U.S. at 225, 36 L. Ed. 2d at 862, 93 S. Ct. at 2047, quoting *Culombe*, 367 U.S. at 602, 6 L. Ed. 2d at 1057-58, 81 S. Ct. at 1879.) Generally, although custody alone does not render consent involuntary, circumstances surrounding the custody may.

"Of significance are such aggravating factors as (i) that the arrest occurred late at night, (ii) that the arrest was made with a display of weaponry, (iii) that the arrest was made by a forcible entry or by use of force against the person, (iv) that the arrestee was placed in cuffs or otherwise kept under close restraint after his arrest, (v) that in a search incident to arrest the police gained custody of a key or similar means of entry to the place they are asking to search, (vi) that the police used the custody to make *repeated* requests for consent, and (vii) that the custody was used as leverage, in the sense that the arrestee was told he would be released if he gave consent." (Emphasis in original.) (3 W. Lafave, Search & Seizure § 8.2(b), at 183 (2d ed. 1987), at 61 (Supp. 1994).)

Other factors include whether the defendant knew or was warned he had the right to refuse to consent (*Phillips*, 264 Ill. App. 3d at 217-18, 636 N.E.2d at 1121), and whether consent was obtained following a police refusal to grant the person's request to consult with counsel (3 W. LaFave, Search & Seizure § 8.2(k), at 218 (2d ed. 1987)).

■ Both the State and defendant list factors they assert tend to show voluntariness, or lack thereof, here. We agree with the State the only aggravating factors present are that defendant was in custody and in handcuffs. There were no threats or deceit, and no physical or psychological coercion. Defendant was given *Miranda* warnings, and defendant admits he knew he had a right to refuse consent yet consented anyway by signing a written form, which defendant further admits he read and understood. Defendant was not in the confines of a police station, and the police had detained him only a short time before requesting his consent to search. Although the police had possession of defendant's motel key, the key was obtained by a legal search incident to arrest. The police did not "refuse" defendant's request for counsel by failing to appoint counsel within 14 minutes after arrest. Indeed, the officers honored defendant's request by ceasing any interrogation. The police made an accurate assertion to defendant that if he did not consent, they would seek to obtain a search warrant. Such an assertion, when true, does not vitiate consent. *People v. Coles* (1991), 217 Ill. App. 3d 1079, 578 N.E.2d 86.

Because of the lack of particularly coercive factors in this case, it appears the trial court created a *per se* rule that custody plus handcuffs renders consent involuntary. Although no Illinois court has considered this issue, case law does not support such a rule. For example, in a case involving the voluntariness of statements as opposed to consent, statements made by a defendant were found to be voluntary even though the defendant was arrested, placed in handcuffs, and transported to a police station. *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015; see also *People v. Zynda* (1977), 53 Ill. App. 3d 794, 802, 368 N.E.2d 1079, 1085 (custody alone does not vitiate consent).

Defendant argues, however, a *per se* rule is mandated by *People v. Shaver* (1979), 77 Ill. App. 3d 709, 396 N.E.2d 643, a case relied on by the trial court. In *Shaver*, although the defendant was not formally arrested, he was handcuffed and transported to the police station in the back of a locked police van. At the station, he was given *Miranda* warnings and requested a lawyer. The police then asked him for permission to take his photograph. He consented, but later moved to suppress the photograph, arguing his consent had been coerced solely because of the environment in which he consented. The trial court denied the motion, but the second district reversed, summarily concluding: "[Defendant] has maintained that being handcuffed and transported in a locked police van together with the surroundings at the station created a coercive atmosphere which invalidated his

consent. We agree \*\*\*." *Shaver*, 77 Ill. App. 3d at 713, 396 N.E.2d at 646.

No Illinois court has followed *Shaver*, and three courts have declined to use *Shaver* as precedent on the issue of coercion by distinguishing its facts: *People v. Meddows* (1981), 100 Ill. App. 3d 576, 427 N.E.2d 219 (fifth district, defendant was not handcuffed or in a locked vehicle when transported); *People v. Hobson* (1983), 117 Ill. App. 3d 191, 452 N.E.2d 771 (fourth district, defendant consented to being handcuffed); and *Taggart*, (233 Ill. App. 3d 530, 599 N.E.2d 501) (second district, defendant not handcuffed, nothing particularly coercive in police station atmosphere). *Shaver* is distinguishable: defendant's consent was not gained within the confines of a police station, nor had defendant been transported anywhere in a locked (or unlocked) vehicle. *Shaver*, therefore, does not mandate the *per se* rule urged upon us.

Nor is such a *per se* rule appropriate. Every encounter with a police officer involves some element of inherent coercion because of the legal authority with which the officer is vested. However, the question is whether that inherent coercion is sufficient to overbear the will of the person giving consent. (See *Schneckloth*, 412 U.S. at 225, 36 L. Ed. 2d at 862, 93 S. Ct. at 2047.) Being in custody and handcuffs does not overbear a person's will as a matter of law. Further, such a *per se* rule would effectively eliminate the possibility of consent searches immediately following arrest. Most, if not all, arrested suspects are placed in handcuffs for security reasons. Therefore, a *per se* rule would place the police in a dilemma after having arrested a suspect. An arresting officer would have to choose between risking leaving the suspect unhandcuffed if the officer wished to obtain valid consent, or handcuffing the suspect as a safety precaution and as a consequence forfeiting any possibility of obtaining valid consent. Because such a dilemma is unwarranted by either law or public policy, the trial court erred by impliedly adopting such a theory. Further, given the lack of particularly coercive factors present, and given defendant's concession he understood he had a right to refuse to consent as a matter of law, defendant's will was not overborne. The trial court erred by finding defendant's consent involuntary.

### D. *The Inevitable Discovery Doctrine*

The State finally argues the trial court erred by failing to apply either the independent source or inevitable discovery doctrine to the evidence at issue. Generally, evidence obtained from an illegal search and seizure is excluded from evidence. However, two closely related exceptions to this rule are the "independent source" and the "inevi-

table discovery" doctrines. (*Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.) "The independent source doctrine allows admission of evidence that *has been* discovered by means wholly independent of any constitutional violation." (Emphasis added.) (*Nix*, 467 U.S. at 443, 81 L. Ed. 2d at 387, 104 S. Ct. at 2508.) Under the inevitable discovery doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably *would have been* discovered by lawful means *** the evidence should be received." (Emphasis added.) *Nix*, 467 U.S. at 444, 81 L. Ed. 2d at 387-88, 104 S. Ct. at 2509.

The State argues the cannabis should be admissible because it was discovered through an independent source when the motel maid found the cannabis. The State is partly correct. Assuming the seizure of the cannabis *itself* was illegal, *other* evidence concerning the cannabis would be admissible. The motel maid, motel manager, and arresting officer would be able to testify concerning the appearance and odor of the material alleged to be cannabis. This is because these witnesses are sources of evidence concerning the cannabis *independent* from the search of the motel room.

■ Regardless, the State is correct the cannabis and other evidence found in the motel room are admissible under the inevitable discovery doctrine. Generally, courts will find evidence inevitably would have been discovered if (1) the condition of the evidence when actually found by lawful means would have been the same as that when improperly obtained; (2) the evidence would have been discovered through an independent line of investigation untainted by the illegal conduct; and (3) the independent investigation was already in progress at the time the evidence was unconstitutionally obtained. *People v. Perez* (1994), 258 Ill. App. 3d 133, 138, 630 N.E.2d 158, 162.

■ The State argues the test is met here. Defendant asserts the State has failed to meet its burden because it failed to present any evidence at the suppression hearing. The State responds by asserting it need not have presented any evidence because the facts brought out during defendant's case in chief were sufficient. The State also notes defense counsel at the suppression hearing conceded in his closing remarks:

> "The police officers could have obtained a search warrant. It is clear that had they gone before an impartial magistrate and attempted to get a search warrant they could have done so, but didn't do so. Again, that is absolutely clear on the face of this evidence."

The State has clearly met its burden here. The motel maid, motel manager, and the arresting officer all believed the material on the

bed looked and smelled like cannabis. The police were attempting to obtain a warrant, and undoubtedly would have obtained one had they not ceased attempting to do so because of defendant's consent to search. Defense counsel conceded this point. Also, there is no dispute the evidence would have been in the same condition. The trial court erred by failing to admit the cannabis under the inevitable discovery doctrine.

The judgment of the trial court is reversed.

Reversed.

GREEN and STEIGMANN, JJ., concur.