MCMILLAN, Judge.
The appellant was convicted of kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975, and one count of attempted sexual abuse, in violation of § 13A-6-66. The appellant was sentenced to 20 years’ imprisonment on the conviction for kidnapping in the first *1294 degree and 12 months’ imprisonment on the conviction for attempted sexual abuse; these terms were to run concurrently. The appellant was also ordered to pay $50 to the victims’ compensation fund and court costs.
I
The appellant argues that the trial court erred by allowing into evidence photographs taken of his automobile and a photograph of him that was shown by the Huntsville Police Department to the victim for identification purposes. He also argues that any testimony concerning these photographs was inadmissible. Specifically, the appellant argues that these photographs were inadmissible because he says they were “fruit of the poisonous tree,” in light of the trial court’s pretrial suppression of his confessions and the evidence obtained as a result thereof.
The record indicates that the victim, a 12-year-old female, was walking home after school with several other children. A scuffle broke out among some of the children, during which the appellant emerged from a small automobile parked nearby, ostensibly to break up the fight. However, the appellant grabbed the victim by the arm and pulled her into his car, while the other children watched. He then drove the victim to a house, where he took her inside and told her to pull down her pants and panties and to pull up her shirt. The appellant then began to rub alcohol on the victim’s inner thighs and around her vagina. At some point, the appellant turned his back on the victim, and she was able to kick him and to run out of the house screaming. The victim eventually approached a police officer who was using a pay telephone at a Quik Stop convenience store. The officer was in fact reporting the possible abduction of the victim, when he observed the child coming towards him. The officer had learned the victim’s name from the other children, and when the girl identified herself, the officer proceeded to take her home. The victim was then able to direct the officer to the area of the house to which she had been taken. However, the victim pointed out two similar houses on the same street. The officer found no one at either address and began talking to neighbors, in order to learn who lived in the two houses. He learned from the neighbors that the appellant lived at one of the houses and he was also able to learn the name of the resident of the other house. He then heard a radio dispatch on his police radio, which was based on the appellant’s illegally obtained confession, and which named the appellant as the possible offender. The dispatch also gave the appellant’s address. The appellant confessed by calling the police from a telephone booth in front of a Piggly Wiggly grocery store. While the appellant was making this telephone confession, the police department alerted officers of the appellant’s location and he was apprehended and arrested. One of the officers who arrived at the telephone booth photographed the appellant in order to obtain an identification from the victim. He also photographed the appellant’s car, which was located at the crime scene.
At trial, in response to the appellant’s objection to the introduction of these photographs as evidence, the State noted that these photographs would have inevitably been taken.[1] The trial court questioned the officer who took the photographs and the officer testified that the photographs were taken as part of the police standard operating procedure. Although the officer testified that when he took the photographs, he was unaware of the investigation and of the actions of the officer who was with the victim and searching the neighborhood, he testified that because he had information which led him to believe that the appellant was the culprit, the pictures were taken as part of police routine.
In the present case, these photographs would have inevitably been taken, as part *1295 of standard police procedure pursuant to the investigation by the first officer, who had already discovered the crime scene and learned the appellant’s name through a neighbor.
“The dispositive issue is whether, granting establishment of the primary illegality, the evidence sought to be suppressed was gathered ‘by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).”
Hornsby v. State, 517 So.2d 631 (Ala.Cr. App.), cert. denied, 517 So.2d 639 (Ala. 1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1224, 99 L.Ed.2d 425 (1988). “It must be established by a preponderance of the evidence that ultimately or inevitably the information would have been discovered by lawful means.” Meadows v. State, 584 So.2d 953, 957 (Ala.Cr.App.1991), citing Nix v. Williams, 467 U.S. 431, 443-44, 104 S.Ct. 2501, 2508-09, 81 L.Ed.2d 377 (1984). See also State v. Spears, 560 So.2d 1145, 1151-52 (Ala.Cr.App.1989).
“... [Circumstances justifying application of the ‘inevitable discovery’ rule are unlikely to be present except when
“ ‘the illegal police conduct occurred while an investigation was already in progress and resulted in the discovery of evidence that would have eventually been obtained through routine police investigatory procedure. The illegalities in such cases, therefore, had the effect of simply accelerating the discovery. In general, where the prosecution can show that the standard prevailing investigatory procedure of the law enforcement agency involved would have led to the discovery of the questioned evidence, [such as] an identification check with the F.B.I., questioning the victim, or searching for witnesses, [the] exception will be applied because of the certainty that the procedure would have been followed and the predictable nature of the resulting in-formation_’ ”
LaFave and Israel, Criminal Procedure § 9.3(e) (1984), quoting Note, 74 Colum.L.Rev. 88, 90-92 (1974).
Because under the circumstances of this case, the photographs of the appellant and of his car at the crime scene would have inevitably been taken as part of routine police procedure, there was no error in their admission into evidence.
II
The appellant argues that the trial court committed reversible error by allowing an officer to testify concerning the individual who resided at the other house on the street identified by the victim. The record indicates that the following occurred during the direct examination of this police officer:
“Q. As part of your investigation, did you make a determination as to who resided at [that address]?
“A. Yes, I did.
“Q. Who was that?
“[Defense counsel]: I object to any testimony about who resided at [that address], that would call for hearsay testimony unless this person has personal knowledge of that.
“THE COURT: He’s going to tell us about his investigation, go ahead.
“A. According to the Huntsville Utilities, there was no listing in the blue book or the city directory, but according to the Huntsville Utilities, a [R.T.] lived at [that address].”
However, the name of the person who resided at that address[2] was irrelevant to the facts of this case and was also undisputed matter. “[T]he defendant is not prejudiced by testimony of a witness which related to uncontradicted matters.” Yelton v. State, 294 Ala. 340, 342, 317 So.2d 331 (1974). See also Johnson v. State, 378 So.2d 1164, 1170 (Ala.Cr.App.), cert. denied, 378 So.2d 1173 (Ala.1979). Thus, the appellant suf *1296 fered no prejudice by the introduction of this testimony.
Ill
The appellant argues that the prosecutor used his strikes against two black potential jurors in a racially discriminatory manner, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also Powers v. Ohio, — U.S. -, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). However, the record indicates that the prosecutor gave race-neutral reasons for his strikes of these two potential jurors.
As to the first of these black venire-members, the prosecutor stated that he was struck because he was late taking his place on the panel, because he had been previously arrested for theft and burglary, and because he had indicated during questioning that he did not believe that the thigh was an intimate part of the body. The prosecutor noted that all other potential jurors who indicated that they did not believe that the thigh was an intimate part of the body were also struck.
As to the second of these potential jurors, the prosecutor stated that he was struck because he was unemployed, because he had previously testified for a defendant in a criminal case, because he had been previously arrested and convicted for possession of marijuana, and because he also had indicated that he did not believe that the thigh was an intimate part of the body.
Most of the prosecutor’s reasons for these strikes were facially race-neutral, Hernandez v. New York, — U.S. -, 111S.Ct. 1859, 114 L.Ed.2d 395 (1991). Although certain of the reasons given have been held to be suspect, such as unemployment, Ex parte Bird, 594 So.2d 676 (Ala. 1991), because in this case the prosecutor also gave sufficient race-neutral reasons, one need not determine whether those suspect reasons were race-neutral. Davis v. State, 555 So.2d 309 (Ala.Cr.App.1989). The reason concerning the intimacy of the thigh was based specifically on the facts of this case, and was a reason for which whites were also struck. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We find no error on this ground.
IV
The appellant argues that the trial court erred in failing to give his requested jury instruction concerning a “hung jury.” The record indicates that, before trial, the appellant requested that the trial court charge the jury on its option of returning a “hung jury” verdict. At the conclusion of trial, the appellant renewed his request. In the present case, the jury never became deadlocked and, therefore, such an instruction was not required. Although the appellant cites Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in support of his argument, the State notes in its brief, the holding in that case supports the idea that “[t]he very object of the jury system is to secure unanimity by a comparison of views.... ” Allen v. United States, supra, at 501, 17 S.Ct. at 157.
V
The appellant argues that the trial court committed reversible error by refusing to instruct the jury that it could find him guilty of enticing a child into an automobile, as a lesser-included offense of kidnapping in the first degree. “[I]n determining whether one offense is a lesser-included offense of another, a court must consider both the potential relationship of the statutes defining the offenses in abstract terms and the facts of the particular case. Ex parte Jordan, 486 So.2d 485, 488 (Ala.1986).” J.D.S. v. State, 587 So.2d 1249, 1258 (Ala.Cr.App.1991). The offense of enticing a child into a vehicle or a house for immoral purposes requires that the accused “with lascivious intent ... entice, allure, persuade or invite, or attempt to entice, allure, persuade or invite” the child into the vehicle or the house. § 13A-6-69, Code of AlabamaVYVó. The offense of kidnapping in the first degree, however, requires no such enticement, but rather an abduction with intent to inflict physical injury, or sexually violate or abuse the vie- *1297 tim. § 13A-6-43(a)(4), Code of Alabama 1975. An abduction is a restraint of a person with intent to prevent his liberation. § 13A-6-40(2), Code of Alabama 1975.
Under the facts of the case, there is no evidence of any enticing, persuading, or inviting of the victim, or attempt thereof, by the appellant. Thus, there is no reasonable theory from any part of the evidence that would support a finding that although the appellant was not guilty of kidnapping in the first degree and sexual abuse, he was guilty of enticing a child to enter a vehicle or a house for immoral purposes as a lesser-included offense. See Vinson v. State, 601 So.2d 196, 198 (Ala.Cr.App.1992).
AFFIRMED.
All Judges concur. BOWEN, P.J., concurs specially with opinion, MONTIEL, J., joins.

. Although the State argued at trial that these photographs could not be suppressed as fruit of the illegal confession because, it argues, photographs are not entitled to the same protection, identification evidence which is the direct result of an illegal arrest has been held unlawful as the "fruit of the poisonous tree.” See LaFave and Israel, Criminal Procedure § 9.4(d) (1984).

. Although the victim was originally uncertain as to whether she had been taken to one of two houses because of their similar in appearance, the resident of this house was never involved in any manner in this offense.