**Douglas Leon SMITH, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–6613.**

Supreme Court of Alaska.

Nov. 21, 1997.

---

Walter Share, Seattle, David Loutrel, Anchorage, for Petitioner.

Nancy R. Simel, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before RABINOWITZ, MATTHEWS, COMPTON, EASTAUGH and FABE, JJ.

*OPINION*

COMPTON, Justice.

## I. *INTRODUCTION*

In this case we are called upon to decide whether evidence obtained illegally may be admissible under the "inevitable discovery" or "independent source" exceptions to the exclusionary rule. We hold that the "independent source" exception does not apply, and remand the case for consideration of the "inevitable discovery" exception, as formulated herein.

## II. *FACTS AND PROCEEDINGS*

Undercover Police Officer Wilbur Hooks made arrangements to sell a kilogram of cocaine to Edwardo Aragon in an Anchorage parking lot.[1] Aragon inspected the cocaine and stated that his "money man" would have to see it before the sale could proceed. When Hooks refused to go to the "money man's" house, Aragon arranged to have the "money man" join them in the parking lot.

Following a call from Aragon, Douglas Leon Smith arrived at the parking lot in a truck. Hooks gave Aragon the cocaine, and Aragon joined Smith in the truck. A short time later, Aragon returned to Hooks bearing a brown paper bag which contained $26,000.

When Smith started to leave the parking lot, Anchorage police officers attempted to arrest him. Following a chase through city streets, the police captured Smith and recovered the cocaine from a snow berm on the side of the road down which Smith had fled.

Investigator Linda O'Brien, the officer in charge of the operation, questioned Smith at the police station in order to obtain basic booking information. After Smith provided his name and social security number, he asked if he was entitled to a phone call. O'Brien told Smith he could make a phone call when he arrived at the jail. She then asked Smith for his home address. When Smith asked if he was required to answer, O'Brien replied that he was, and stated that if he withheld this information she would ask the magistrate to require him to give his address as a condition of his release on bail. Smith then provided his address.

After questioning Smith, O'Brien sought to obtain a search warrant for Smith's residence. During the warrant hearing, O'Brien told the magistrate that she knew where Smith resided, because Smith had told her the location. O'Brien also stated that the residence was located at the address listed on Smith's driver's license. Based on this testimony, the magistrate issued the warrant. The police then searched the residence and recovered records of drug sales, guns, cocaine, drug paraphernalia, and $100,000 in cash.

At Smith's trial, the State sought to admit the evidence discovered in the search. Smith moved to suppress that evidence on the ground that O'Brien violated his right to make a telephone call immediately following his arrest, by refusing to permit him to make a telephone call until after he arrived at the jail. Smith also claimed that the warrant was tainted by the fact that O'Brien told the magistrate that she had corroborated Smith's statement revealing his address by referring to Smith's driver's license, which actually contained a different address.

In response to Smith's motion, O'Brien testified that initially she had obtained Smith's address from the Anchorage Police Department following a check on his license plate information. She testified that when Smith later told her his address, she remembered that this was the same address which she previously had obtained. She stated that this information was also corroborated by the fact that Aragon had given a general location for Smith's residence. She said she misspoke when she testified before the magistrate that she had confirmed Smith's address from his driver's license, and that she had meant to identify Smith's vehicle license as the source of that information.

---

1. All facts here set forth are taken from the opinion of the court of appeals, *Smith v. State,* Mem. Op. & J. No. 2641 at 2–5 (Alaska App., March 10, 1993). A more detailed factual recitation may be found there.

The superior court denied Smith's motion to suppress. The court found that while O'Brien had violated Smith's right to make a telephone call under AS 12.25.150, O'Brien obtained Smith's address by checking his license plate number before she questioned him. The court also found that O'Brien questioned Smith concerning his name and address only to obtain booking information, rather than to learn his address so that she could obtain a warrant to search his residence.[2]

Following the denial of his motion, Smith was convicted; he appealed. The court of appeals held that O'Brien violated Smith's right to make a phone call, and that any evidence resulting from this violation, including Smith's statement providing his address, had to be suppressed unless it fit within the independent source exception to the exclusionary rule. *Smith v. State*, Mem. Op. & J. No. 2641 at 6 (Alaska App., March 10, 1993). The court of appeals remanded to the superior court for a determination of this issue. *Id.* On remand the superior court found that O'Brien had sufficient evidence from independent, legal sources to determine Smith's address in the absence of Smith's statement. The court concluded that the evidence seized during the search of Smith's home was admissible. The court of appeals affirmed this decision. *Smith v. State*, Mem. Op. & J. No. 2956 (Alaska App., July 27, 1994).

Smith then petitioned this court for a hearing to review the decision of the court of appeals. We granted the petition, and ordered briefing of the following issue:[3]

Does the inevitable discovery rule apply to this case, assuming Officer O'Brien could have readily retrieved Mr. Smith's address from a vehicle registration check? *See State v. Hazelwood*, 866 P.2d 827 (Alaska 1993). If so, should the inevitable discovery rule be adopted in Alaska?[4]

## III. DISCUSSION

### A. The Independent Source Exception Does Not Apply.

The court of appeals held that the independent source exception to the exclusionary rule applied in this case and thus suppression was not required.

We first recognized the independent source exception to the exclusionary rule in *Erickson v. State*, 507 P.2d 508 (Alaska 1973). *Erickson* illustrates how the exception is intended to work. Erickson discussed in the presence of a witness drug sales which he was about to make. That witness later saw Erickson load a suitcase with drugs and lock it. The witness took the suitcase to the police. The police, acting without a warrant, opened the locked suitcase and discovered the drugs. They then arrested Erickson, and discovered a small quantity of marijuana on his person. We held that the opening of the suitcase without a warrant was an unconstitutional search, and that the drugs found in the suitcase had to be suppressed under the exclusionary rule. *Id.* at 516. However, Erickson's conviction of possession of marijuana was based on the marijuana found on his person at the time of his arrest. This conviction was upheld because at the time of the arrest, the police had sufficient evidence to detain Erickson independent of the evidence gleaned through the illegal search of the suitcase. In reaching this conclusion we stated:

---

2. The court also accepted O'Brien's claim that she unintentionally misspoke when she said that she had learned Smith's address from his driver's license.

3. We accept as a premise of our analysis in this case the legal conclusions of the superior court and the court of appeals that O'Brien violated Smith's rights under AS 12.25.150 by denying Smith a phone call, and that ordinarily a violation of the AS 12.25.150 right invokes the exclusionary rule under which evidence resulting from a violation cannot be used in the trial of the accused. *See Zsupnik v. State*, 789 P.2d 357, 361–63 (Alaska 1990).

4. Smith questions this court's decision to address the inevitable discovery rule, since it was not raised by the State in the proceeding below. However, Alaska Appellate Rule 304 grants this court broad discretion in determining what issues will be reviewed. The circumstances of this case suggest that the inevitable discovery rule, if adopted in this jurisdiction, would apply to this case. Furthermore, the order granting review directed the parties to brief this issue. Smith has not been prejudiced.

It is well settled that the exclusionary rule renders inadmissible evidence obtained indirectly as a result of an unlawful search or seizure as well as evidence directly obtained thereby. [*Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).] The question for determination is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 [83 S.Ct. at 417]. Once a causal connection is established between the proffered evidence and the primary illegality, the evidence must be excluded unless it falls within the "independent source," "attenuated connection," or "inevitable discovery" limitations.

*Erickson,* 507 P.2d at 516 (footnote omitted). We also noted:

The fact that the suitcase was subject to an illegal search should not taint the evidence of the second search. Again the test posed by [*Wong Sun*] was whether the evidence objected to was obtained by the "exploitation" of the initial illegality or means "sufficiently distinguishable" to be "purged of the primary taint." The arrest could have been based on the "independent source" of the conversations with [the witness].... [T]here was enough probable cause to arrest defendant before the search, based on the first hand reports of [the witness]. The fact that the intervening search of the suitcase was illegal should not relate back and taint the basis for probable cause existing before the search.

*Id.* at 519.

We also applied the independent source exception in *Cruse v. State,* 584 P.2d 1141 (Alaska 1978). In *Cruse,* a drive-in theater was robbed by the occupants of a white Mercury automobile. A witness wrote down the automobile's license number as it left the scene and immediately reported the robbery to the police. Shortly thereafter the Mercury was stopped and its occupants were arrested. A state trooper opened the trunk in order to inventory its contents. A city policeman arrived just as the trooper was opening the trunk and observed a long barreled revolver and a brown paper bag in the trunk. The city policeman advised the trooper that the city police would take the car for evidence and closed the trunk until he could get a warrant. The warrant application did not mention that the trunk had been opened or a description of its contents. A warrant was issued and the trunk was then searched, revealing the proceeds of the robbery. The defendant moved to suppress the items found in the trunk. His motion was denied in the superior court. On appeal we affirmed. We assumed *arguendo* that the original trunk opening was an illegal search, but held that because the police had ample independent, lawfully obtained evidence to obtain a search warrant the items in the trunk did not have to be suppressed:

We must determine whether the subsequent search warrant issued as a product of the prior allegedly illegal trunk search.... The controverted evidence here was obtained through information wholly independent of the initial trunk search. The evidence presented to the district court in support of the search warrant was procured without resort to any clue or knowledge gained from the trunk search. The investigation leading to the lawful search was not intensified or significantly focused by reason of any tainted information. Moreover, there was no exploitation of the alleged misconduct to discover new evidence as prohibited by [*Wong Sun*]. The exclusionary rule extends only to those facts which were actually discovered through a direct process initiated by the unlawful act. Where the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible.

*Cruse,* 584 P.2d at 1145 (citations and footnotes omitted).

In the present case the superior court found that, even though Officer O'Brien violated Smith's rights, Smith's vehicle registration was an independent source for determining his address. This information was corroborated by Aragon's statements, and by the timing of Smith's arrival at the parking

lot. The court of appeals found the superior court's conclusion regarding the independent source to be supported by the record. *Smith v. State*, Mem. Op. & J. No. 2956 at 2–3 (Alaska App., July 27, 1994). We disagree.

 O'Brien obtained Smith's address from his vehicle registration, but failed to write it down or remember it. The only direct source she relied upon for Smith's address was Smith's own statement, obtained, as we assume, in violation of his rights. It was this information that was presented to the judicial officer who issued the warrant. Although there was an independent source available for Smith's address, O'Brien failed to utilize it. As a result the warrant was issued solely on information obtained illegally. The independent source exception requires that the police know of and act on lawfully obtained independent evidence at the time they take the challenged action—here the application for a warrant. The fact that police could have easily obtained lawful evidence is insufficient by itself to meet this requirement. In *Cruse* we said: "Where the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible." *Cruse*, 584 P.2d at 1145. Here, a nearly opposite situation exists: the disputed evidence stems from the illegal conduct, even though it could have been derived from an independent and lawful source. Accordingly, the independent source exception is not applicable.

### B. The Inevitable Discovery Exception May Apply.

Although we referred to the inevitable discovery exception in *Erickson v. State*, 507 P.2d 508 (Alaska 1973), and applied it in a federal law context in *State v. Hazelwood*, 866 P.2d 827 (Alaska 1993), we have not previously adopted it as a matter of state law. We do so in this case. The inevitable discovery exception was described in *Hazelwood*, 866 P.2d at 831, 832 as follows:

The doctrine is an exception to the exclusionary rule in cases where evidence has been obtained in violation of constitutional protections such as the Fifth Amendment privilege against self-incrimination. The doctrine is essentially a variation on the independent source rule, except that the question is not whether the police actually obtained evidence from an untainted source, but whether evidence obtained through a constitutional violation would inevitably have been discovered through a lawful means.

The Supreme Court noted that the "core rationale" for the exclusionary rule is "to deter police from violations of constitutional and statutory protections." [*Nix v. Williams*, 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984).] "On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired." *Id.* at 443 [104 S.Ct. at 2508]. However, the rule is not meant to put the prosecution in a position *worse* than if no police misconduct occurred. *Id.* Thus, the Supreme Court has recognized the inevitable discovery doctrine. If the prosecution can prove that the challenged evidence "ultimately or inevitably would have been discovered by lawful means, ... then the deterrence rationale has so little basis that the evidence should be received."

(Footnotes omitted.)

Scholars disagree concerning the advisability of the inevitable discovery rule. Professor LaFave has summarized the various views:

On the one hand, it is said that it "is a valuable, logical and constitutional principle," the continued application of which will not "emasculate or blunt the force of the exclusionary rule." So the argument goes, the "inevitable discovery" test, "if properly administered, serves well the *raison d'etre* of the exclusionary rule by denying to the government the use of evidence 'come at by the exploitation of ... illegality' and at the same time minimizes the opportunity for the defendant to receive an undeserved and socially undesirable bonanza." Others object that it is "based on conjecture" and "can only encourage police shortcuts whenever evidence may be more readily obtained by illegal than by legal means," and

thus "collides with the fundamental purpose of the exclusionary rule." As one commentator put it:

> Such a rule is completely at odds with the purpose of the exclusionary rule. If the police will only be deprived of that evidence which the defendant can show they would not have been able to obtain had they not engaged in the illegality, they will in no way be deterred from such conduct; all they will stand to lose is what they would not have otherwise had and they might gain some advantage if something slips by. Moreover, the illegal route is often faster and easier than the legally required route.

5 Wayne R. LaFave, *Search & Seizure* § 11.4(a), at 242 (3d ed.1996) (footnotes omitted). However, despite the scholarly debate, many state courts have adopted some form of the inevitable discovery exception.[5] In our view the inevitable discovery exception can and should be formulated so that it meets the concerns expressed in the quoted LaFave excerpt.

■ To begin with, as to the concern that the exception is "based on conjecture," we agree with the Supreme Court of Hawaii that the prosecution should have the burden of proving by a clear and convincing standard of proof that the evidence would have been discovered absent the illegality. *State v. Lopez,* 78 Hawai'i 433, 896 P.2d 889 (1995). The Hawaii court adopted the view taken by Justice Brennan in the dissent in *Nix v. Williams:*

> In his dissent, Justice Brennan began by agreeing that "the 'inevitable discovery' exception to the exclusionary rule is consistent with the requirements of the Constitution." However, Justice Brennan opined that the majority overlooked the crucial distinction between the "inevitable discovery" exception and the "independent source" exception.
>
> When properly applied, the 'independent source' exception allows the prosecution

**5.** *See Jones v. State,* 615 So.2d 1293, 1295 (Ala. Crim.App.1993); *State v. Acosta,* 166 Ariz. 254, 801 P.2d 489, 493 (Ariz.App.1990); *Brunson v. State,* 296 Ark. 220, 753 S.W.2d 859, 861 (1988); *Green v. Superior Ct.,* 40 Cal.3d 126, 219 Cal. Rptr. 186, 192, 707 P.2d 248, 254 (1985), *cert. denied,* 475 U.S. 1087, 106 S.Ct. 1472, 89 L.Ed.2d 727 (1986); *People v. Breidenbach,* 875 P.2d 879, 889 (Colo.1994); *State v. Vargas,* 34 Conn.App. 492, 642 A.2d 47, 50 (1994); *Cook v. State,* 374 A.2d 264 (Del.Supr.Ct.1977); *Hilliard v. United States,* 638 A.2d 698, 707 (D.C.App. 1994); *Maulden v. State,* 617 So.2d 298, 301 (Fla.1993); *Barnett v. State,* 204 Ga.App. 491, 420 S.E.2d 43, 47 (1992); *State v. Lopez,* 78 Hawai'i 433, 896 P.2d 889, 907 (1995); *State v. Cook,* 106 Idaho 209, 677 P.2d 522, 529 (Idaho App.1984); *People v. Alvarado,* 268 Ill.App.3d 459, 206 Ill.Dec. 15, 644 N.E.2d 783 (1994); *State v. Jorgensen,* 526 N.E.2d 1004, 1008 (Ind. App.1988); *State v. Williams,* 285 N.W.2d 248, 258 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980); *State v. Waddell,* 14 Kan.App.2d 129, 784 P.2d 381, 387 (1989); *Commonwealth v. Elliott,* 714 S.W.2d 494 (Ky.App.1986); *State v. Melbert,* 649 So.2d 740, 744 (La.Ct.App.1994); *State v. Storer,* 583 A.2d 1016, 1019–20 (Me.1990); *Oken v. State,* 327 Md. 628, 612 A.2d 258, 271 (1992), *cert. denied,* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993); *Commonwealth v. O'Connor,* 406 Mass. 112, 546 N.E.2d 336 (1989); *People v. Thomas,* 191 Mich.App. 576, 478 N.W.2d 712 (1991); *Geer v. State,* 406 N.W.2d 34 (Minn.App. 1987); *State v. Butler,* 676 S.W.2d 809 (Mo. 1984); *State v. Allies,* 186 Mont. 99, 606 P.2d 1043 (1979); *State v. Houser,* 241 Neb. 525, 490 N.W.2d 168 (1992); *Carlisle v. State,* 98 Nev. 128, 642 P.2d 596 (1982); *State v. Beede,* 119 N.H. 620, 406 A.2d 125 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980); *State v. Boswell,* 111 N.M. 240, 804 P.2d 1059 (1991); *People v. Fitzpatrick,* 32 N.Y.2d 499, 346 N.Y.S.2d 793, 300 N.E.2d 139 (1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *State v. Garner,* 331 N.C. 491, 417 S.E.2d 502, 507 (1992); *State v. Johnson,* 531 N.W.2d 275 (N.D.1995); *State v. Kinley,* 72 Ohio St.3d 491, 651 N.E.2d 419 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1324, 134 L.Ed.2d 476 (1996); *McGregor v. State,* 885 P.2d 1366 (Okl.Crim.App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995); *State v. Miller,* 300 Or. 203, 709 P.2d 225 (1985), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986); *Commonwealth v. Rudisill,* 424 Pa.Super. 313, 622 A.2d 397 (1993); *State v. Trepanier,* 600 A.2d 1311 (R.I.1991); *Satter v. Solem,* 458 N.W.2d 762 (S.D.1990), *cert. denied, Rist v. Satter,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989); *State v. Coury,* 657 S.W.2d 777 (Tenn.Crim.App.1983); *Oliver v. State,* 711 S.W.2d 442 (Tex.App.1986); *State v. Palmer,* 803 P.2d 1249 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991); *Walls v. Commonwealth,* 2 Va. App. 639, 347 S.E.2d 175 (1986); *State v. White,* 76 Wash.App. 801, 888 P.2d 169 (1995); *State v. Hawkins,* 167 W.Va. 473, 280 S.E.2d 222 (1981), *cert. denied,* 455 U.S. 925, 102 S.Ct. 1287, 71 L.Ed.2d 468 (1982); *State v. Kennedy,* 134 Wis.2d 308, 396 N.W.2d 765 (Wisc.App.1986); *Wilson v. State,* 874 P.2d 215, 225 (Wyo.1994).

to use evidence only if it was, in fact, obtained by fully lawful means. It therefore does no violence to the constitutional protections that the exclusionary rule is meant to enforce. The 'inevitable discovery' exception is likewise compatible with the Constitution, though it differs in one key respect from its next of kin: specifically, the evidence sought to be introduced at trial has not actually been obtained from an independent source, but rather would have been discovered as a matter of course if independent investigations were allowed to proceed.

Thus, Justice Brennan pointed out that "[t]he inevitable discovery exception necessarily implicates a hypothetical finding that differs in kind from the factual finding that precedes application of the independent source rule." Because of this distinction, Justice Brennan would have required the prosecution to satisfy a heightened burden of proof before allowing evidence to be admitted under the "inevitable discovery" exception to the exclusionary rule. He explained:

> To ensure that this hypothetical finding is narrowly confined to circumstances that are functionally equivalent to an independent source, and to protect fully the fundamental rights served by the exclusionary rule, I would require clear and convincing evidence before concluding that the government had met its burden of proof on this issue. Increasing the burden of proof serves to impress the factfinder with the importance of the decision and thereby reduces the risk that illegally obtained evidence will be admitted.

*Id.,* 896 P.2d at 906–07 (citations omitted) (emphasis in original).

Also taking the view that proof at least as strong as the clear and convincing standard is required are the Supreme Courts of North Carolina, *State v. Garner,* 331 N.C. 491, 417 S.E.2d 502, 506 (1992) (applying clear and convincing standard), and Massachusetts, *Commonwealth v. O'Connor,* 406 Mass. 112, 546 N.E.2d 336, 339 (1989) (holding that inevitability must be "certain as a practical mat-

ter"); *see also* R. Bradley Lamberth, *The Inevitable Discovery Doctrine: Procedural Safeguards to Ensure Inevitability,* 40 Baylor L.Rev. 129, 145 (1988) (stating that courts should adopt "clear and convincing" standard to deter police misconduct and diminish chance of courts admitting tainted evidence). We adopt the same standard here.

■ In addition, we perceive a need to safeguard against the use of the inevitable discovery exception in cases where discovery by legal means was possible, but not truly inevitable. The exception should come into play only when the evidence in question truly would have been discovered through procedures likely to be employed under the circumstances, rather than through unusual measures which police would only employ if given the benefit of hindsight. *See* LaFave, *supra* at 247 (warning against "sophisticated argument aided by hindsight"). Accordingly, in order to invoke the exception, the prosecution "must establish, first, that certain *proper and predictable* investigatory procedures would have been utilized in the case at bar, and second, that those procedures would have inevitably resulted in the discovery of the evidence in question." LaFave, *supra* at 248 (citation omitted, emphasis added). We note, however, that "predictable investigatory procedures" may encompass resourceful investigations which go beyond mere "standard operating procedures." Such procedures may also include "a series or chain of standard and routine investigatory procedures each stage and its results being clear and predictable," as well as "saturation investigations" which "leave no stone unturned." Stephen H. LaCount & Anthony J. Girese, *The "Inevitable Discovery" Rule, an Evolving Exception to the Constitutional Exclusionary Rule,* 40 Albany L.Rev. 483, 494 (1976). Even unusual or unique investigatory techniques may qualify as "predictable investigatory procedures," so long as the need to employ such techniques would have been readily apparent to the investigator in the absence of any benefits provided by hindsight. In evaluating whether a particular act qualifies as a "predictable investigatory procedure," a trial court must consider the "experience, ability, and knowledge" of the in-

vestigator, as well as "the quality and value of sources of information ... lawfully in his possession." *Id.* at 496.

▆▆▆▆ Finally, we recognize the potential for the inevitable discovery exception to encourage police illegality, as noted by Professor LaFave. , *supra* at 244. As he suggests:

> Because one purpose of the exclusionary rule is to deter [unconstitutional] shortcuts ... the "inevitable discovery" rule should be applied only when it is clear that "the police officers have not acted in bad faith to accelerate the discovery" of the evidence in question.

*Id.* at 245. This rationale has been adopted by the Supreme Court of North Dakota. *State v. Phelps,* 297 N.W.2d 769, 775 (N.D. 1980).[6] We also find this reasoning persuasive. Accordingly, we believe that the exception should not be available in cases where the police have intentionally or knowingly violated a suspect's rights.

Taken together, the safeguards outlined above should ensure that the adoption of the inevitable discovery exception does not provide an opportunity for the prosecution to benefit from illegal activity. We conclude that if the prosecution can show, by clear and convincing evidence, that illegally obtained evidence would have been discovered through predictable investigative processes, such evidence need not be suppressed as long as the police have not knowingly or intentionally violated the rights of the accused in obtaining that evidence. Accordingly, this case must be remanded to the court of appeals with directions to remand it to the superior court for a determination whether facts necessary for application of the inevitable discovery exception exist in this case. If such facts exist, Smith's conviction should stand. If not, the superior court must determine whether the admission of the challenged evidence was prejudicial.[7]

## IV. CONCLUSION

The decision of the court of appeals regarding the independent source exception to the exclusionary rule is REVERSED. The case is REMANDED for consideration of the inevitable discovery exception under the test adopted in this opinion.

MATTHEWS, J., dissenting in part.

EASTAUGH, J., concurring in part, dissenting in part.

MOORE, C.J., not participating.

---

**6.** Smith argues that the explicit right to privacy granted by article I, section 22 of Alaska's Constitution should prohibit the application of the inevitable discovery doctrine, especially where the illegal search is of the defendant's home. *See State v. Ault,* 150 Ariz. 459, 724 P.2d 545, 551–52 (1986). However the exclusionary rule should not be applied so as to place the prosecution in a position worse than if no police misconduct had occurred. *Hazelwood,* 866 P.2d at 831. Excluding evidence that, by its very definition, would inevitably have been discovered, would clearly put the prosecution at a greater disadvantage than if there had been no police misconduct.

**7.** Smith argues that any error is prejudicial. The State claims that any error was harmless, in light of the fact that a quantity of cocaine was recovered from the side of the road near the location where Smith was apprehended. We express no opinion on this matter, but leave this issue for resolution below if the case so requires.

We note in passing that Smith has no right to violate the law by causing the destruction of evidence discovered in the search of his home. As a matter of public policy, a violation of a suspect's rights which has the sole effect of denying that suspect the opportunity to take an illegal action is harmless. Accordingly, Smith cannot claim that he was prejudiced by the denial of the opportunity to destroy evidence. On remand, Smith must confine himself to arguments concerning the potential for discovery of the evidence, in the absence of any illegal conduct by himself or others acting on his behalf. A number of other courts, in construing the federal constitution, have suggested that discovery inevitability may be refuted by the possibility of destruction or concealment of evidence by or on behalf of a defendant. *United States v. Cabassa,* 62 F.3d 470, 473–74 (2d Cir.1995); *United States v. Roberts,* 852 F.2d 671, 676 (2d Cir.1988); *United States v. Boatwright,* 822 F.2d 862, 865 (9th Cir.1987); *United States v. Owens,* 782 F.2d 146, 153 (10th Cir.1986); *State v. Miller,* 300 Or. 203, 709 P.2d 225, 243 (1985). Because these authorities concern constitutional violations, we are not persuaded that we should apply them in the context of a violation of an Alaska statute. We need not decide in this case whether violation of a federal or state constitutional provision would require a different analysis.

MATTHEWS, Justice, dissenting in part.

I agree that we should adopt as a matter of state law the inevitable discovery exception. Further, I think the prosecution should have the burden of proving inevitable discovery by clear and convincing proof, and the exception should not be available in cases where the police have intentionally or knowingly violated a suspect's rights.

My concern is with the additional test imposed by today's opinion, namely that the evidence must have been discoverable by "predictable investigatory procedures." In many cases, this test may be merely surplusage. When the prosecution can show that evidence would inevitably have been discovered, such a showing will often necessarily encompass a demonstration that predictable investigatory procedures would have uncovered the evidence. However, the court's reference to "a series or chain of standard and routine investigatory procedures" may assume a standardization of procedures which does not exist in many police departments in Alaska. Further, some investigations may not be routine or standard because of the unique nature of the crime involved. Nonetheless, even in the absence of standardized procedures and even in unique investigations it may well be possible to prove inevitable discovery by clear and convincing evidence.

Finally, requiring discovery through predictable investigatory procedures may exclude from the coverage of the exception cases that do not fit the independent source exception but in which the questioned evidence is actually discovered by legal means. Assume for example that Officer O'Brien wrote down Smith's address obtained from the vehicle registration check and subsequently mislaid the paper on which she wrote this information. Assume also that she later obtained the address from Smith, as was done in this case, and used it to obtain the warrant. Finally, assume that she discovered the missing note soon after the warrant was issued. Such a case would not fit the independent source exception for it was the illegally obtained evidence that was used to obtain the warrant. However, inevitable discovery would be established by clear and convincing evidence as the evidence was *actually* discovered by legal means. Nonetheless, under the formulation of the inevitable discovery exception propounded by the court today, the admissibility of that evidence would founder on the predictable investigatory procedures test.

Similarly, if shortly after the warrant were obtained a neighbor of Smith's, having observed his arrest, were to call the police and give them Smith's address, again inevitable discovery of the address would be established by clear and convincing evidence, but the discovery would be the product of luck rather than predictable investigatory procedures.[1]

In summary, although the predictable investigatory procedures test has been suggested by a number of legal commentators and adopted by the courts of several states,[2] I do not favor its adoption because, in my opinion, it is not necessary to protect the rights of the accused and it needlessly narrows the logical scope of the inevitable discovery exception.

EASTAUGH, J., concurring in part and dissenting in part.

Although I agree with the court's discussion of the independent source exception

---

1. The Nebraska Supreme Court was confronted with a similar situation in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). The defendant's house was illegally searched and the police seized an address book containing the names of persons who, it would turn out, led the police to B.T., who had been sexually abused by the defendant. *Id.*, 440 N.W.2d at 212. Previously, a concerned neighbor had given the name of B.T. to other police officers conducting an independent investigation. *Id.* at 213. Although it was the evidence in the illegally seized address book that was used to locate B.T.—thus precluding the application of the independent source rule—B.T. was allowed to testify under the inevitable discovery doctrine. This conclusion was reached, in part, because B.T.'s name had already been discovered by legal, though serendipitous, means. *Id.* at 214.

2. *E.g., Clark v. State*, 555 So.2d 823 (Ala.Crim.App.1989); *State v. Cook*, 106 Idaho 209, 677 P.2d 522 (Idaho App.1984); *Oken v. State*, 327 Md. 628, 612 A.2d 258 (1992); *State v. Sugar*, 100 N.J. 214, 495 A.2d 90 (1985); *State v. Barnum*, 136 Or.App. 167, 902 P.2d 95 (1995); *State v. Richman*, 85 Wash.App. 568, 933 P.2d 1088 (1997).

(Part III.A), and most of its discussion of the inevitable discovery exception (Part III.B), I disagree with that portion of its opinion that would require the prosecution to prove inevitable discovery by clear and convincing evidence in this case.

The rationale for the clear and convincing standard was first expressed by Justice Brennan in dissent in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Imposition of the higher burden of proof is intended to "ensure that this hypothetical finding [contemplated by the inevitable discovery doctrine] is narrowly confined to circumstances that are functionally equivalent to an independent source, and *to protect fully the fundamental rights served by the exclusionary rule.*" *Id.* at 459, 104 S.Ct. at 2517 (Brennan, J., dissenting) (emphasis added).

*Nix,* and the decisions this court cites in support of a heightened proof standard, involved violation of constitutional rights. *Nix,* 467 U.S. at 436, 104 S.Ct. at 2505; *State v. Lopez,* 78 Hawai'i 433, 896 P.2d 889, 898, 907 (1995) (applying clear and convincing standard in part to "ensure that the added protection in the Hawai'i Constitution is not vitiated by a 'bad guess' "); *Commonwealth v. O'Connor,* 406 Mass. 112, 546 N.E.2d 336, 337, 340 (1989) ("We think the severity of the constitutional violation is critical in deciding whether to admit evidence that it is shown would inevitably have been discovered."). Here, however, the exclusionary rule is being applied to a violation of statutory rights conferred by AS 12.25.150.[1]

In *Zsupnik v. State,* 789 P.2d 357 (Alaska 1990), this court held that the exclusionary rule applies to evidence procured in violation of AS 12.25.150. However, the court did so not because it determined the right secured by that statute was of a fundamental or constitutional nature; rather, it applied the exclusionary rule because "the refusal of a telephone call after the arrestee is in custody at a station involves an intentional act in a situation where an officer can calmly reflect on his action before taking it." *Id.* at 361. *See also Copelin v. State,* 659 P.2d 1206 (Alaska 1983), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 357 (1984). The exclusionary rule thus deters violation of the statute. However, the right to a telephone call (especially one to a roommate) secured by AS 12.25.150 is not in and of itself of constitutional stature.

The rationale supporting the imposition of a clear and convincing standard of proof is absent where only statutory, non-fundamental rights have been violated. I would hold that where only non-constitutional rights are at stake, the prosecution need prove inevitable discovery by only a preponderance of the evidence.

I also agree with Justice Matthews's view, expressed in his dissent, that the inevitable discovery exception should not incorporate a "predictable investigatory procedures" element.

I also write separately to emphasize our rejection of one of Smith's arguments on appeal.

In his opening brief in this court, Smith argued that the inevitable discovery doctrine should not apply because, had he not been unlawfully denied his telephone call, he "could have called friends or roommates to remove the evidence before police arrived." In his reply brief, Smith argued that he had ample time to call his roommate, and that, even if police had been posted outside the house to prevent destruction of evidence, his roommate inside the house "could have disposed of evidence before police arrived with a warrant to enter." This court's prospective rejection of that argument is contained in a footnote. Maj. op. at 481 n. 7.

Several decisions have implicitly recognized that deliberate efforts to conceal or destroy evidence could prevent its inevitable discovery. *United States v. Roberts,* 852 F.2d 671, 676 (2d Cir.1988); *State v. Miller,* 300 Or. 203, 709 P.2d 225, 242–43 (1985). *See*

---

1. Although Smith argues in his brief that his statement was obtained in violation of his Fifth Amendment rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the superior court and court of appeals held only that Smith's statutory rights were violated. *Smith v. State,* Mem. Op. & J. No. 2641 at 2–6 (Alaska App., March 10, 1993). The court does not appear to hold otherwise.

*also State v. Garner*, 621 So.2d 1203, 1209 (La.App.1993) (ruling the evidence inevitably would have been found because the defendants "did not have a long time to plan disposal" of the evidence pending a search by warrant).

It bears emphasis that public policy bars any argument by Smith that, but for the violation of AS 12.25.150(b), he could have prevented discovery of the evidence by using the telephone to procure its concealment or destruction. This is especially true given the non-constitutional rights to which the exclusionary rule is applied in this case. The trial court, when deciding the inevitable discovery dispute on remand, may not condone an argument or admit evidence that Smith would have arranged to have his roommate destroy or conceal the contraband if such acts of Smith or his roommate would have constituted new crimes.[2]

Smith also argues that he was unable to telephone an attorney. Public policy precludes any argument or evidence that by telephoning an attorney Smith could have procured the concealment or destruction of evidence. Courts must reject speculation that an attorney would act criminally or unethically in response to such a telephonic request. *Cf.* Alaska Rule of Professional Conduct 1.2(d) (lawyer shall not assist client to engage in conduct the lawyer knows is criminal).

---

**2.** *See* AS 11.56.610 (tampering with physical evidence); AS 11.56.770 (hindering prosecution in the first degree); AS 11.71.040 (misconduct involving a controlled substance in the fourth degree); AS 11.71.050 (misconduct involving a controlled substance in the fifth degree); AS 11.16.110 (accountability for causing another to engage in proscribed conduct); AS 11.31.110 (soliciting criminal conduct by another).