**Jeffrey W. ANDERSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8421.**

Court of Appeals of Alaska.

May 28, 2004.

---

4. 714 P.2d 802 (Alaska App.1986).

5. *Id.* at 806.

6. 45 P.3d 329 (Alaska App.2002).

7. *Id.* at 333.

8. 828 P.2d 1207 (Alaska App.1992).

9. *Id.* at 1209.

## OPINION

STEWART, Judge.

This case requires us to decide whether a search of a prisoner complied with the Alaska Constitution as construed by our supreme court over twenty years ago in *Zehrung v. State*.[1] Even though we conclude that the search violated *Zehrung*, we affirm Jeffrey W. Anderson's conviction because the superior court found that the evidence would have been discovered inevitably, and the superior court's findings are supported by the record.

### Background facts and proceedings

We first considered this case in *Anderson v. State,* Alaska App. Memorandum Opinion and Judgment No. 4796 (November 26, 2003) 2003 WL 22800672, and remanded the case to the superior court for additional findings regarding the search of Anderson by a correctional officer at the Lemon Creek Correctional Center ("Lemon Creek").

On December 30, 2001, Juneau Police Officer Joel Hinz saw Anderson driving a van. Officer Hinz knew from a recent contact that Anderson did not have a driver's license. Officer Hinz called dispatch and learned that Anderson still did not have a driver's license and that there was an outstanding bench warrant for Anderson's arrest for failure to appear. Bail on the bench warrant was set at $1,000.

Officer Hinz stopped Anderson's vehicle and arrested Anderson on the outstanding bench warrant and also arrested him for the driver's license offense. Officer Hinz searched Anderson but did not find any weapons or contraband. Officer Hinz told Anderson that his bail was $1,000 on the bench warrant.

Officer Hinz drove Anderson to Lemon Creek. When they arrived at Lemon Creek, Correctional Officer Leigh Bauer accompanied Officer Hinz and Anderson into the "sally port," the area of the facility where a person is taken before being placed in a holding cell.

Officer Bauer searched Anderson and found, among other things, a knife and a

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

1. 569 P.2d 189 (Alaska 1977), *modified,* 573 P.2d 858 (Alaska 1978).

"tupperware type" plastic container, which was "approximately 2 1/2 inches across and 3/4 inch thick," and which had a white top and a clear plastic bottom. She handed it to Officer Hinz, who saw inside the container a "white powdery substance" and a red straw, approximately one and one-half inches long, with a spoon-like end. (Alaska State Crime Lab tests later reported that the confiscated plastic container contained trace amounts of methamphetamine.)

Officer Bauer placed Anderson in the holding cell. Officer Hinz again told Anderson the amount of his bail, and—for the first time—asked Anderson if he could post bail. Officer Hinz did not recall Anderson responding to this question. Once Anderson was placed in the holding cell, he was given the opportunity to make a phone call. However, Anderson did not post bail until January 3, 2002, four days after his arrest.

The grand jury indicted Anderson on one count of fourth-degree misconduct involving a controlled substance.[2] Anderson moved to suppress evidence on the grounds that the initial search by the correctional officer was illegal. Anderson argued that the search was illegal because he was not given a reasonable opportunity to post bail before the search was conducted. The superior court denied Anderson's motion, ruling that the search was permissible because it was merely a weapons search, not an inventory search. Anderson entered a *Cooksey*[3] plea preserving his right to appeal the denial of the suppression motion.

On appeal, we remanded the case to the superior court for additional findings regarding the search and the issue of inevitable discovery.

On remand, Superior Court Judge Larry R. Weeks found that Officer Bauer was not conducting a weapons search when she discovered the evidence. He found that she was collecting Anderson's possessions because he would not be allowed to take them into the facility. Although Judge Weeks questioned the validity of the search under *Zehrung*, he found that Officer Bauer did not knowingly or intentionally violate Anderson's rights.

### Discussion

 Anderson argues that the trial court erred in refusing to suppress the methamphetamine found on his person because the search at Lemon Creek was an illegal pre-incarceration inventory search. In *Zehrung,* the Alaska Supreme Court ruled that when a person is arrested on a minor charge for which bail has been set, the person must have a reasonable opportunity to raise bail before being subjected to booking procedures and a pre-incarceration inventory search.[4]

In *Gray v. State,*[5] we further defined the State's ability to search an arrestee under the rule established in *Zehrung.*[6] Gray was arrested on an outstanding $500 misdemeanor warrant.[7] After an initial search for weapons by the arresting officer, Gray was transported to Matanuska Pretrial Correctional Facility.[8] There, a correctional officer asked whether Gray had money for bail, and Gray replied that he hoped that a friend was bringing it.[9] Before Gray had an opportunity to arrange for bail, the correctional officer searched Gray and removed all articles from his pockets.[10]

While the State characterized the search Gray underwent as a "patdown," we ruled that the "routine emptying of an arrestee's pockets . . . cannot be justified merely by labeling the procedure a 'patdown.' "[11] We defined a "patdown" as an external probing of clothes and articles for signs of possible

2. AS 11.71.040(a)(3)(A) (possession of methamphetamine).

3. See *Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

4. *Zehrung,* 569 P.2d at 195.

5. 798 P.2d 346 (Alaska App.1990).

6. *Id.* at 349–51.

7. *Id.* at 347.

8. *Id.*

9. *Id.* at 348.

10. *Id.*

11. *Id.* at 350.

weapons.[12] We concluded that the scope of a "patdown" is exceeded when the search "extends beyond the exterior of a person's clothing or possessions and intrudes into pockets and closed containers."[13] In a "patdown," an officer can intrude beyond the outer clothing of a suspect only if the "initial exploration discloses potential weapons."[14]

We also rejected the argument that the policy of removing all articles from arrestees' pockets was necessary to prevent contraband from entering the prison. We emphasized that in order to justify a pre-incarceration inventory search of a person arrested for an offense with a pre-set bail, the State must demonstrate individualized exigency requiring the search.[15] Since the State could not demonstrate this exigency, but searched Gray merely by institutional policy, we ruled that the State had failed to justify the search.[16]

Anderson's bail on the misdemeanor warrant in this case was $1,000 and the bail for the license offense was $50. Although the total bail required is slightly more than double the bail in *Gray*, we conclude that *Zehrung* should apply to this case as well.

Officer Bauer testified that the policy at Lemon Creek is to "do a thorough search in the sally port before we let [a prisoner] into the facility." She said that "[w]e got into the sally port. I conducted the search and I pulled the items out of his pockets and handed them over." She also testified that

"[o]nce [Anderson's] pockets were emptied then I did a pat search of his person."

We recognized in *Gray* that a patdown search for weapons is permissible when a prisoner is brought to the jail for a minor offense for which bail has been set on the bail schedule or on the warrant, but that the search for weapons can only be an external probing of clothing and articles for signs of possible weapons. The search can proceed beyond that initial patdown only if the patdown discloses potential weapons.[17]

The Department of Corrections has promulgated regulations governing a search on admission to a corrections facility. 22 AAC 05.010(a) provides that "[f]acility staff members shall frisk a prisoner and hand-carried items for weapons or other contraband immediately upon entrance to the facility." The Department of Corrections defines contraband broadly.[18] Almost any item felt on a prisoner in a patdown search could satisfy the Department's definition of contraband and be subject to seizure under a search that followed these regulations. But the State neither argues that Officer Bauer followed this procedure, nor that the procedure described in the regulation complies with *Zehrung*.

Officer Bauer immediately emptied Anderson's pockets following the procedure she testified was used at Lemon Creek. Judge Weeks found that Officer Bauer emp-

12. *Id.* at 350 (citing 3 W. LaFave, *Search and Seizure* § 9.4(b) (1987)).

13. *Id.* at 350.

14. *Id.*

15. *Id.* at 351.

16. *Id.* at 353.

17. *Id.* at 350.

18. 22 AAC 05.660(b) provides:

(b) In this chapter, ... "contraband" means any of the following items that have not been specifically approved, authorized, or prescribed by the proper authorities for a prisoner to obtain, make, or possess:

(1) weapons, including firearms, explosives, knives, hacksaw blades, tear gas, dangerous chemical agents, or any tool or other object that may be used as a weapon, from which a weapon may be fashioned, or that is intended to be perceived as a weapon;

(2) controlled substances, the possession of which is punishable by either criminal or civil penalties, and any other type of medication;

(3) alcohol, including wine, distilled spirits, home brew, and any other type of alcoholic substance;

(4) cameras, sound or video recorders, or any electronic or mechanical receiving or transmitting equipment;

(5) any article, including keys, tools, electronic or mechanical devices, and identification information, intended to be used as a means of facilitating an escape; and

(6) any other article, including money, toiletries, books, food, mail, and pictures, that is introduced, taken, or conveyed into a facility, or made, obtained, or possessed in a facility in a manner intended to frustrate or evade detection.

tied Anderson's pockets because Anderson would not be allowed to take the items in his pockets into the institution—not because it was a weapons search. Thus, Officer Bauer's search could not be justified as a search for weapons as we discussed in *Gray*.

■ The State argues that even if Officer Bauer erred by performing a pre-incarceration inventory search, we should nevertheless affirm the denial of Anderson's motion to suppress because the methamphetamine is admissible under the inevitable discovery doctrine.[19] The State asserts that under the Department's regulations, Anderson would have been subject to a full search because he did not post bail within an hour.[20]

Anderson claims that the State raises this argument for the first time on appeal. However, the State raised the inevitable discovery argument in its opposition to Anderson's motion to suppress.

■ The Alaska Supreme Court has defined the inevitable discovery doctrine as follows: "if the prosecution can show, by clear and convincing evidence, that illegally obtained evidence would have been discovered through predictable investigative processes, such evidence need not be suppressed as long as the police have not knowingly or intentionally violated the rights of the accused in obtaining that evidence."[21]

Judge Weeks found that the State showed by clear and convincing evidence that the methamphetamine would have been discovered inevitably. He further found that Officer Bauer, who testified that she was following Lemon Creek procedure, did not intentionally or knowingly violate Anderson's rights. Judge Weeks's findings are supported by evidence in the record, and he found that

Anderson's failure to post bail was not influenced by the discovery of the contraband.

Because Anderson was under arrest on misdemeanor charges with bail specified on the warrant or on the bail schedule, the search of Anderson should have complied with *Zehrung*, but did not. Even though the search violated *Zehrung*, the evidence found on Anderson would have been discovered inevitably. Accordingly, we must affirm Anderson's conviction.

*Conclusion*

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, concurring.

Two questions are potentially presented in this case. First, did the search of Anderson's person by corrections officials at the Lemon Creek Correctional Facility violate the search and seizure clause of the Alaska Constitution (Article I, Section 14) as construed by our supreme court in *Zehrung v. State*, 569 P.2d 189 (Alaska 1977), *as modified on rehrg.*, 573 P.2d 858 (1978)? Second, if the search was illegal, did this illegal search actually harm Anderson, given the fact that Anderson failed to post bail and remained in jail for the next four days?

The answer to the second question is "no"; Anderson was not harmed by the search. We therefore need not resolve the first question (the legality of the search).

Anderson was arrested for driving without a valid driver's license; at the same time, he was arrested on a bench warrant that had been issued when he failed to appear in court. Anderson's total bail was $1050 ($1000 for the bench warrant, and $50 for the driving offense).

---

**19.** *See Smith v. State*, 948 P.2d 473, 478–81 (Alaska 1997).

**20.** 22 AAC 05.010(b) & (c) provide:
 (b) A full and complete search of the prisoner and his or her personal effects must be made to complete the admission process. The purpose of the search is to account for property, seize contraband, or ascertain the prisoner's true identity. The staff member shall require the prisoner to undress as part of the search upon admission. Absent exigent cir-

cumstances, a staff member of the same sex shall conduct a search of the person. A search may be deferred while a prisoner is incapacitated.
 (c) Notwithstanding (b) of this section, the search may not take place if the prisoner is able to post bail or otherwise arrange release within one hour after entrance into the facility.

**21.** *Smith*, 948 P.2d at 481.

When Anderson was brought to the Lemon Creek Correctional Facility, before he had a chance to post this bail, corrections officials removed and examined the entire contents of his pockets. The corrections officer who performed this search testified that this was a standard procedure at Lemon Creek.

Twenty-five years ago, in *Zehrung,* the Alaska Supreme Court declared that it is illegal to subject a prisoner arrested for a minor offense to this type of inventory search until it is clear that the prisoner will be unable to post bail and, as a consequence, will in fact be placed among the general jail population. *Id.* at 194–95. The testimony presented in Anderson's case suggests that, even though *Zehrung* has been the law of this state for a quarter of a century, the Department of Corrections routinely violates *Zehrung* (at least at the Lemon Creek Correctional Facility) by conducting thorough searches of newly arrived arrestees without giving them the opportunity to post bail.

However, the superior court concluded that the drugs found in Anderson's possession would inevitably have been discovered because, as it turned out, Anderson could not post bail—and thus, within a short time, the Department of Corrections became authorized to conduct the same thorough-going search of his person and possessions.

It is uncontested that Anderson did not post bail and that he remained in jail for another four days. But obviously, if the discovery of the drugs had led immediately to a new felony drug charge against Anderson, or even to increased bail on Anderson's existing charges (failure to ap-pear and driving without a valid license), this would tend to defeat the State's argument that Anderson would "inevitably" have been unable to post bail and secure his release before corrections officers conducted the full inventory search allowed under *Zehrung.*

Indeed, if Anderson had testified that the discovery of the drugs affected his motivation to try to round up the bail money (by convincing him that it would be pointless to try to post the $1050, given the fact that the authorities could easily get the court to set a much higher bail by filing a felony drug charge), we would question the superior court's finding of inevitability.

But Anderson never suggested that his failure to post bail stemmed from anything other than his inability to secure the needed $1050. Moreover, the superior court expressly found that the discovery of the drugs did not affect Anderson's ability to post bail. This being so, I agree with the superior court that, even if the Lemon Creek staff violated Anderson's constitutional rights by thoroughly searching his person upon his initial arrival at the jail, Anderson would inevitably have been subjected to the same type of search a short time later. For this reason, I conclude that any violation of *Zehrung* did not prejudice Anderson, and he was not entitled to suppression of the drugs.